JUDGE MARRERO

**13 CIV 5210**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MRM 88, LLC. d/b/a Regis Royale Restaurant

                                       Plaintiff,           Index No.:

                                                                                      COMPLAINT
                                                                                                 ECF CASE

88 Greenwich Owner, LLC and
Thor Equities, LLC

                                        Defendants.
-----------------------------------------------------------------X

       Plaintiff. MRM 88, LLC. d/b/a Regis Royale Restaurant. by and through its attorneys, Shapiro & Stern, LLP by way of this complaint alleges:

## PARTIES

       1.     Upon information and belief. Plaintiff MRM 88. LLC. d/b/a Regis Royale Restaurant is a corporation organized and existing under the laws of the state of New York, with its principal place of business in the County of New York in the State of New York at c/o Nathaniel Shapiro, Esq., 39 Broadway 37th Floor New York, NY 10006.

       2.     Upon information and belief, Defendant 88 Greenwich Owner, LLC is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Delaware. Defendant 88 Greenwich Owner, LLC is Plaintiff's landlord.

       3.     Upon information and belief, Defendant Thor Equities, LLC is a corporation organized and existing under the laws of the state of Delaware with its

1

principal place of business in Delaware. Upon information and belief, Thor Equities is Plaintiff's landlord.

4.     Whenever in this Complaint reference is made to any act, deed, or transaction of the Defendants, the allegation means that the Defendants engaged in the act, deed, or transaction, either individually, or by or through their partners, officers, directors, agents, employees, or representatives, as the case may be, while they were actively engaged in the management, direction, control or transaction of Defendants' business or affairs.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper pursuant to 28 USC §1332. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

6.     Venue is proper pursuant to 28 USC §1391.

## FACTS

## BACKGROUND AND SUMMARY

7.     In around the end of 2008, Plaintiff, MRM 88, LLC, d/b/a Regis Royale Restaurant ("Regis") a restaurant, began negotiating with Defendants to lease empty space in Defendants' building with an address of 82-88 Greenwich Street a/k/a 97 Washington Street New York, NY 10006, a/k/a 21 Rector Street New York, NY 10006. The purpose was for Plaintiff to open a restaurant in said space.

8.     On or around January 30, 2009 Plaintiff signed a lease ("the Original Lease") for the ground floor space and mezzanine level for the restaurant's operations (the "Restaurant"). *See* Exh. A.

9. Defendants granted $110k in tenant improvements/construction allowances. Plaintiff gave the landlord a $75K security deposit. *See* Exh. A section 1.3 (c)(1).

10. Plaintiff then began construction to fit the premises for the Restaurant and its specific needs.

11. In or around November 2011, Plaintiff leased additional space in the mezzanine section of the Restaurant. *See* Exh. B. This space was divided into two. One side served as additional seating space for more formal dining and the other side served as space for parties (the "Party Room").

12. Due to Defendants' various obstructions, delays and obfuscations, as detailed later herein, Plaintiff's construction work took over two years to complete. Plaintiff was first only able to open the Restaurant on or around May 21, 2011. This was two years after signing the Original Lease.

13. Up until and through this very day, Plaintiff has been unable to open the Party Room. As detailed later herein, Defendants various obstructions are even now disturbing Regis from operating the Party Room.

14. Furthermore, and as in detail later, Plaintiff was without the barest necessities after Sandy. Plaintiff was without: water, gas, electricity, telephone service and internet service. A restaurant simply cannot operate without all of these necessities. Plaintiff was completely unable to access the premises as it needed to during the time of Sandy and its aftermath.

**DEFENDANTS' OBSTRUCTIONS, DELAYS AND OBFUSCATIONS**

15.     Shortly after signing the Original Lease, Regis sent Defendants plans for a proposed build out of the premises. Here too, Defendants obfuscated and delayed granting their approval. After a few months Defendants eventually granted their approval. On or around June 6, 2009 Plaintiff applied and eventually received approval from the NYC Department of Buildings for the construction plans. *See* Exh. C.

16.     Even after eventually approving the plans, Defendants still disapproved various components therein.

17.     At or shortly after the Original Lease signing, Defendants told Plaintiff that the existing exhaust hood in the kitchen is perfect and Plaintiff does not need to replace it with a new exhaust. Plaintiff then proceeded to construct the Restaurant kitchen to their individual needs.

18.     Only later, in or around the fall of 2010, Defendants, however, said that Plaintiff must install a new exhaust system. This caused Plaintiff a delay of more than eight months because Plaintiff had already constructed the kitchen with the old exhaust in place. Plaintiff was forced to destroy the old one and install a new one. And Even after Regis agreed to install a new exhaust system, Defendants delayed and only agreed to the plan after some time.

19.     The demolition and new installation involved extra costs. Defendants told Regis that they would pay but in fact never did and Plaintiff was forced to pay out of pocket.

20.     In the end of 2010, Defendants conveyed to Plaintiff that the walls in the mezzanine section would pass a fire inspection. Ultimately this proved untrue when they

indeed failed said inspection. Plaintiff incurred more costs and time for this additional construction.

21. During this time, the NYC Department of Buildings approval had expired due to Defendants actions and obstructions to Plaintiff's approved construction. Plaintiff had to renew and extend the permit numerous times. *See* Exh. D. Nevertheless, Defendants continued to seek the monthly rent.

22. At this time, the parties agreed to the amended lease for the Party Room space. The amendment granted Plaintiff time on the rent and provided that Defendants would reimburse Plaintiff One Hundred Fifty Thousand Dollars ($150,000.00) upon Plaintiff's opening. *See* Exh. B. This amount was to reimburse for the exhaust, mezzanine walls, mechanical work and the bathroom on the mezzanine level. Regis also gave Defendants an additional $40,000.00 as a security deposit to $115,550.00. Exh. B section 9.

23. Defendants delayed this reimbursement and eventually in 2012 reimbursed $35,000.00 for the mezzanine wall construction.

24. Defendants have yet to reimburse the remainder of said amount.

25. There was also a significant delay involving the sprinkler system. The Original lease provides that Plaintiff must have an Ansul sprinkler system. Regis fully complied and had an Ansul system. Over a year later in around July 2012, when Plaintiff leased the Party Room - and Defendants were to pay Regis at least some of the monies owed to Regis - the Defendants told Plaintiff that per the building's policy a sprinkler system is required and that an Ansul sprinkler system is insufficient. The lease, however,

only mandates Regis to have an Ansul system and states nothing as to the necessity of another sprinkler system. *See* Exh. A section 5.2(h).

26. Nonetheless, Plaintiff agreed to install an additional sprinkler system and planned on attaching the new system to the existing sprinkler pipe. Defendants, however, told Plaintiff that he cannot attach to the existing sprinkler system because that line is reserved for the lobby's sprinklers and the pipe has insufficient power for the additional sprinkler system.

27. Instead Plaintiff had to redraw the sprinkler system from the basement. That delay added costs to Plaintiff and also delayed Plaintiff from opening the Party Room because that space could not be used at all for three months.

28. While Defendants refrained from charging Plaintiff rent for three months for the Party Room, this delay was for an additional three months which Regis paid rent.

29. As a result Plaintiff suffered pecuniary damages for the three months paid rent.

30. The Party Room has a private direct entrance (and exit) located on the Washington Street side of the premises. This entrance is entirely separate and apart from the Restaurant's doors which are located at 21 Rector Street.

31. From Sandy until around June 2013 Defendants caused construction to take place right outside the Party Room entrance causing the entrance to be inaccessible and unusable. Exh. E.

32. Plaintiff was unable to rent out the Party Room for that entire period. First patrons could not access the entrance and second the DOB said that it was a building hazard and to use the party room is unlawful.

33.     During the period from around May 24, 2011 to around October 28, 2012 Defendants caused scaffolding to cover the entire facade of Regis' Restaurant, and from thereafter until around mid-March 2013 the scaffolding covered half of Regis' façade. This, of course, caused much damage to Regis who was unable to properly advertise their brand and name.

34.     Regis continuously requested Defendants permission to place a business sign on the exterior of the scaffolding similar to what other tenants did at the time. *See e.g.* Exh. F.

35.     Here too, Defendants obstructed and obfuscated and completely denied Regis' request.

## HURRICANE SANDY

36.     On October 29, 2012 Hurricane Sandy hit NYC and the surrounding areas.

37.     Plaintiff's Restaurant was submerged under at least three feet of water, sewage and oil. Everything in the Restaurant was damaged beyond repair. The walls, windows, furniture, refrigerators, boilers, bathrooms, kitchen behind the bar area ("Pre Kitchen") and all the merchandise including but not limited to food and beverages was damaged and ruined. The premises needed a completely and entire do over. *See* Exh. G.

38.     In addition, the premises had no gas, electric, water, telephone and internet service and plumbing.

39.     Plaintiff met with the superintendent, Mr. Tom Calandro, and together they went through the premises and viewed the total destruction.

40.     Plaintiff then contacted Veronica, Thor's contact person for this property, at Thor's offices and gave her an update on the premises' condition. Plaintiff requested

that Defendants repair the premises. Veronica told Plaintiff that the lease does not cover this damage and Plaintiff must continue to pay rent.

41. Regis physically returned to the premises for December 2012. Regis, however, was without all the basic utilities until around January 7, 2013. During December and January the various basic utilities were sporadic and came back to the Building in stages. Water came back in the beginning of December 2012; electricity through a generator around the same time; and finally gas on or around January 7, 2013.

42. These are all basic utilities that are essential for a restaurant to properly function. Without even one of these utilities, a restaurant simply cannot operate.

43. While Regis returned physically to its rental space by December 2012, the Restaurant was not even close to being operational let alone running at full capacity.

44. Gas is essential for a restaurant's kitchen to properly function and Regis was constructively evicted until at least around January 7, 2013.

45. Plaintiff was completely unable to access the premises as it needed to during the time of Sandy and its aftermath. *See Pacific Coast Silks, LLC v. 247 Realty, LLC*, 76 A.D. 3d 167 (N.Y. App. Div. 2010).

46. Due to the nature of the restaurant business, Plaintiff was unable to wait for Defendants to act and was forced to bear all the costs to repair the damage. Plaintiff spent the following:

    a. $35,000.00 on electric;

    b. $12,000.00 on plumbing;

    c. $75,000.00 on refrigerators, bar, kitchen, boilers;

       d. $30,000.00 on general construction such as new sheet rock for walls, painting and windows;

       e. $45,000.00 for food waste; and

       f. $27,000.00 for furniture

47. Plaintiff spent at least One Hundred Eighty Thousand and Five Hundred Dollars ($180,500.00) just to get the Restaurant operational again. *See* Exh. H. The evidence will show that it Regis' expenditures were much higher.

48. Regis also suffered inventory and property losses of at least $515,450.00. *See* Exh. I.

49. As per the original lease, Defendants are clearly responsible for said repairs. Article 12 – Casualty of the lease in pertinent part states:

> (a) Subject to SECTION 12.1(b), if any part of the Premises shall be damaged by fire or other casualty, Tenant shall give prompt notice thereof to Landlord and Landlord shall commercially reasonable efforts to cause the Condominium to repair such damage to any part of the Premises, the repair of which is the Condominium's obligation under the Condominium Documents, in a manner and at times which do not unreasonably interfere with Tenant's use of the Premises, Rent shall not be reduced or abated during the period of such repair, restoration or rebuilding even if the improvements are not tenantable. Landlord shall not be liable for any inconvenience or annoyance to Tenant or injury to the business of Tenant resulting in any way from the undertaking of such repair.
>
> (c) In the event Landlord does not terminate this Lease in accordance with the provisions herein above, Landlord shall use commercially reasonable efforts to cause the Condominium to repair or rebuild the Premises in accordance with Paragraph (a). The estimates required herein shall be provided by an independent architect, representative and/or contractor selected by the Condominium within sixty (60) days following said damage or casualty.

50. Plaintiff entirely complied with this section. Plaintiff promptly notified Defendants of the casualty but Defendants did nothing let alone invest reasonably commercial efforts to repair per Paragraph (a).

51. Defendants also failed to provide an independent architect, representative and/or contractor within sixty (60) days of the damage.

52. Moreover, Plaintiff missed the Holiday season of 2012-13. The Holiday season is by far the Restaurant's most profitable time of the year.

53. This caused Regis enormous amounts of missed business and loss in excess of $200,000.00. Attached as Exh. J are copies of Regis' receipts from last year's holiday season and this year's. The profit numbers are incomparable.

54. Up until around February 2013 every Wednesday night at 10pm the Restaurant has to close its doors due to the upkeep of the generator. This caused loss of business to Regis not only due to the early closing but because patrons did not bother coming at all on Wednesdays because they would have had to have left early.

55. The Restaurant did not have proper heat throughout the entire 2013 winter. After numerous complaints by Regis to the Super and others, Regis' plumber, at his own expense, inspected the heating system and reported that the pump was broken and was never replaced. Regis could not properly entertain its patrons due to the brutally cold weather and lack of heat. Patrons came and immediately left due to the cold temperatures in the Restaurant.

56. Due to Sandy and in preparation for such other future circumstances, the Building recently moved the Water Heater out of the basement and is now unjustly attempting to charge Regis for the move.

57. Finally, under information and belief, Defendants at some time after Sandy received substantial insurance proceeds on claims filed in connection to Sandy on

this property. Nevertheless, Defendants have continued to refuse Regis the amounts claimed and owed in this complaint.

## CLAIMS FOR RELIEF

### COUNT I–BREACH OF CONTRACT

58. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

59. The Plaintiff and the Defendants agreed to the various lease clauses mentioned above.

60. By failing to reimburse original construction costs and by failing to repair the costs incurred from Sandy to Plaintiff, Defendants breached its contract with Plaintiff.

61. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

### COUNT II- UNJUST ENRICHMENT

62. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

63. This count is pleaded as an alternative to the count for breach of contract in the event that it is held that there is no contract subject to such a count.

64. Defendants obtained Plaintiff's money, held and used it for their own benefit and to the detriment of Plaintiff.

65. Equity and good conscience require restitution or the equivalent.

66. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

### COUNT III - COMMON LAW FRAUD

67. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

68. This count is pleaded as an alternative to the count for breach of contract in the event that it is held that there is no contract subject to such a count.

69. The Defendants' representations were false, and the Defendants knew they were false when they made those representations.

70. Defendants took Plaintiff's money and told Plaintiff that the lease does not cover the damage from Sandy. Plaintiff justifiably relied on Defendants.

71. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

### COUNT IV - CONVERSION

72. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

73. This count is pleaded as an alternative to the count for breach of contract in the event that it is held that there is no contract subject to such a count.

74. Defendants obtained Plaintiff's money, did the actions complained of (including statements made) and failed to take the actions they should have taken which are complained of, converted it to their own use and have refused to return either the money, or the proceeds thereof, although duly demanded.

75. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

### COUNT V - FFAUD AND FRAUDULENT CONCEALMENT

76. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

77. This count is pleaded as an alternative to the various counts for breach of contract in the event that it is held that there is no contract subject to such a count.

78. Defendants knew they would obtain Plaintiff's money for their own use, that their statements were misleading statements of material fact under the circumstances, intended to control Plaintiff's money to their detriment and to the benefit of Defendants.

79. Defendants also knew that Plaintiff had no access to the true facts except through them.

80. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

## COUNT VI – FRAUD IN THE INDUCEMENT

81. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

82. The implied and stated representations of the Defendants were that once Plaintiff opened his Restaurant for business Plaintiff would be paid.

83. Defendants induced Plaintiff into laying out his own money by telling Plaintiff at their various meetings and conversations that they were going to reimburse Plaintiff but concealed the fact that Plaintiff would not receive the money owed.

84. Plaintiff relied on the Defendants and had a right to rely on their representations and actions. Defendants knew that Plaintiff was relying on the Defendants and took advantage of the facts as alleged.

85. Defendants had sole access to the facts concealed regarding the decision to not reimburse Plaintiff.

86. Defendants knew they would obtain Plaintiff's work for their own use, that their statements were misleading statements of material fact under the circumstances, intended to control Plaintiff's work to their detriment and to the benefit of Defendants.

87. Defendants also knew that Plaintiff had no access to the true facts except through them.

88. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

## COUNT VII - BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

89. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

90. The contract entered into between Plaintiff on the one hand and Defendants on the other hand, carried the implied obligation of good faith and fair dealing on the part of Defendants.

91. By failing to reimburse Plaintiff's construction work and by not adhering to their responsibilities under the lease Defendants did not perform the bargained-for terms of the agreement and breached their good faith and fair dealing obligation to Plaintiff.

92. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

## COUNT VIII - EQUITABLE ESTOPPEL

93. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

94. The contract between Plaintiff and Defendants are subject to the doctrine of equitable estoppel.

95. By leading Plaintiff to believe that their costs would be reimbursed and that Plaintiff was covered under the lease for casualty falsely represented material facts. Defendants had actual knowledge of the facts and intended for Plaintiff to act upon the concealment of those true facts. Plaintiff, had a right to rely on Defendants' conduct, and in fact relied upon Defendants' conduct, had no means of discovering these concealed facts.

96. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

### COUNT IX - NEGLIGENCE

97. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

98. The Defendants had a duty to the Plaintiff because of their standing as the landlord of the property.

99. Defendants' actions and inaction when they had a duty to act were the proximate cause of Plaintiff losses, and Plaintiff have suffered actual damages.

**100.** Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

### COUNT X - TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

101. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

102. Plaintiff had a legitimate and identifiable prospective business advantage as a Restaurant open for business. Defendants were aware of Plaintiff's prospective business advantage and by engaging in the unjustified conduct described more fully hereinabove, Defendants intentionally, negligently, and improperly interfered with Plaintiff's prospective economic advantage in the marketplace.

103. As a direct and proximate result of the conduct of Defendants as alleged hereinabove, Plaintiff has suffered general and special pecuniary and non-pecuniary damages.

104. Defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof Plaintiff suffered economic damage.

105. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

## COUNT XI - PRIVATE NUISANCE

106. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

107. Defendants' scaffolding constituted an interference which was substantial in nature and is unreasonable in character with Plaintiff's right to use and enjoy land.

108. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

## COUNT XII – CONSTRUCTIVE EVICTION

109. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

110. The alleged wrongful acts or inactions by Defendants substantially and materially impaired and deprived Plaintiff of the beneficial use and benefit of the premises.

111. Plaintiff was unable to access the premises as it needed to during the time of Sandy and its aftermath and was materially deprived of their expected and intended use of the premises.

112. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

## COUNT XIII – BREACH OF QUIET ENJOYMENT

113. The Plaintiff incorporates by reference and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

114. Defendants were responsible for the actions or inactions complained of herein and disturbed Plaintiff's right of Quiet Enjoyment.

115. Plaintiff was unable to enjoy the premises in peace and without interference.

116. Defendants are liable to Plaintiff accordingly and Plaintiff demands damages as set out below.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.  General, special, consequential and/or continuing damages including financial loss incurred by Plaintiff from the Defendants, and each of them, plus pre-and post-judgment interest thereon, according to proof or by operation of law;

2.  For Plaintiff's costs, including attorneys' fees; and

3.  For such other and further relief as the Court may deem just and proper.

Dated: New York, NY
July 24, 2013

Shapiro & Stern, LLP

By: _____
Joseph Taub, Esq.
*Attorneys for Plaintiff*
39 Broadway 37th Fl
New York, NY 10006
917.456.7389
joetaub@gmail.com